# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

**NOVELTY DISTRIBUTORS, INC.,**
**D/B/A GREENFIELD LABS,**
351 W. Muskegon Drive
Greenfield, IN  46140

**Plaintiff,**

**v.**

**Michele Leonhart,**                                    **Case No.**
**In her official capacity as**
**Acting Administrator of the**
**Drug Enforcement Administration;**

**DRUG ENFORCEMENT**
**ADMINISTRATION;**

**US DEPARTMENT OF JUSTICE;**

**MICHAEL B. MUKASEY,**
**In his official capacity as the**
**Attorney General of the United States;**
**and**

**UNITED STATES**
**OF AMERICA,**

**Defendants.**

# COMPLAINT

1.     Plaintiff Novelty Distributors, Inc. d/b/a Greenfield Labs (hereinafter

"Novelty") seeks a declaratory judgment and preliminary and permanent injunctive relief

against   Defendants,   including   an   order   dissolving   the   Drug   Enforcement

Administration's ("DEA's") January 28, 2008 summary suspension of Novelty's DEA

registration.  Defendants, collectively, abused their discretion and acted arbitrarily and

capriciously in violation of the Administrative Procedure Act, 5 U.S.C. § 706 and the

Controlled Substances Act, 21 U.S.C. § 801, et seq., by suspending the registration of Novelty as a List 1 chemical distributor and by prohibiting the sale of Novelty's large and costly inventory of cold and cough products without prior notice and without bona fide proof of an imminent danger to the public health and safety under 21 U.S.C. § 824 (d). In Defendants' Order to Show Cause and Immediate Suspension of Registration, they allege eight grounds in support of immediate suspension. Four of the eight grounds are demonstrably false. One is derived from a misreading of the law and a misconstruction of the facts. Two wrongly attribute to Novelty actions that are not is own but are those of others not under Novelty ownership, operation or control. One charge is based on an empirically incorrect estimation of legitimate, therapeutic demand. None of the allegation individually or collective establishes any actual risk to the public health and safety.

2. Novelty is likely to succeed in its action before this court to dissolve the suspension order. Without restoration of Novelty's distributor registration immediately and until the DEA issues a final order following a hearing and appeal, the company will be irreparably injured. Its reputation among its thousands of convenience store customers as an exemplary distributor of cold and cough products containing list 1 chemicals will be destroyed due to the stigmatizing effect of the suspension order. Customers are presently replacing Novelty with its competitors, who sell virtually identical cough and cold products containing list I chemicals. Even if Novelty would later succeed on the order to show cause, the loss of those business relationships in the interim will likely be permanent. With the suspension order in place Novelty is losing a key source of its gross revenue. Novelty has lost the value of its current scheduled listed chemical (SLC) product

inventory, which is sizeable and substantial.  Novelty will soon be forced to terminate employees at its Greenfield, Indiana headquarters to adjust for the loss of revenue. It has also been forced to cut its route sales professionals' annual income to compensate for the revenue losses.

3.   Novelty is also likely to succeed in establishing that its First Amendment rights have been violated.  DEA violated Novelty's First Amendment rights during the execution of an administrative search warrant on Novelty's headquarters on July 11, 2007.  During DEA's execution of the warrant, Novelty Vice President for Product JR Merlau placed upon a tripod video recorders and placed upon a table a tape recorder to make a permanent record for company executives, counsel, and the public of DEA's execution of the warrant (and to preserve evidence for use by counsel), which involved demands for immediate production of over 12,000 documents (a physical impossibility) on threat of arrest.  DEA agents thrice took custody of the recorders, pulled one recorder from the wall, removed it from the room in which it was located, and ordered that the recording device not be used.  DEA now offers the documents and data obtained during the administrative search against Novelty in the administrative hearing and to support DEA's immediate suspension.

## PARTIES

4.   **Novelty Distributors, Inc. d/b/a Greenfield Labs ("Novelty").** Novelty is an Indiana corporation with its principal place of business in Greenfield, Indiana.  Novelty was founded by Todd Green in 1980, then an enterprising high school student who sold hats made in his parents' garage. From those humble origins, Novelty grew into a major supplier of convenience stores that employs 500 people, slightly less than 400 of whom

live in the Midwestern town of Greenfield, Indiana (about 8% of the total adult employed population). Novelty Inc. has grown from a local Indianapolis area business operated in his childhood home to a 500 employee major national distributor. Novelty distributes and sells a wide array of commercial goods to convenience stores throughout the United States, including sunglasses, lighters, key chains, plush toys, and OTC pharmaceuticals. Novelty services thousands of convenience store clients nationwide. Among the pharmaceuticals sold and distributed by Novelty to convenience stores are OTC blister packs and single dose packages containing ephedrine (a bronchodilator) and guaifenesin (an expectorant). Novelty also sells OTC products containing pseudoephedrine, a nasal decongestant. The distribution and sale of those OTC pharmaceuticals accounts for a significant percentage of Novelty's annual revenue.

5. **Michele Leonhart.** The Defendant Michele Leonhart is sued in her official capacity only. She is the Acting Administrator of the U.S. Drug Enforcement Administration, an agency of the U.S. Department of Justice.

6. **U.S. Drug Enforcement Administration.** The Defendant U.S. Drug Enforcement Administration ("DEA") is an agency of the U.S. Department of Justice charged with enforcing the controlled substances laws and regulations of the United States.

7. **U.S. Department of Justice.** The U.S. Department of Justice ("DOJ") is the department of the executive branch of the United States charged with the duty of enforcing laws and regulations of the United States. The DEA is a part of the DOJ.

8.  **Michael Mukasey.**  Michael Mukasey is the Attorney General of the United States.  He is sued in his official capacity only.  He is the head of the Department of Justice and the chief law enforcement officer of the United States.

## JURISDICTION AND VENUE

9.  This court has subject matter jurisdiction (1) under 28 U.S.C. § 1331 as this case concerns matters of federal law and under section 1346(a)(2) as a civil action against the United States founded upon an Act of Congress; and (2) under 21 U.S.C. § 824 (d) because DEA has acted to summarily suspend Novelty's registration without affording Novelty advance notice.  21 U.S.C. § 824 (d) expressly authorizes jurisdiction before this court.  See Norman Bridge Drug Company v. Banner, 529 F.2d 822 (5th Cir. 1976).

10.  This court is the proper venue for this action because the Defendants decisions and actions giving rise to this case, the revocation of Plaintiff's registration, occurred in DEA's Washington, D.C. offices.  28 U.S.C. § 1402(a)(2).

## FACTS

11.  Ephedrine is approved by the Food and Drug Administration ("FDA") as a bronchodilator active ingredient for sale in over-the-counter ("OTC") cold and cough remedies.  21 C.F.R. § 341.16.

12. Pseudoephedrine is approved by FDA as a decongestant active ingredient for sale in OTC cough and cold remedies.  21 C.F.R. § 341.20.

13.  Ephedrine and pseudoephedrine are regulated by the DEA under the Controlled Substances Act (CSA) as List 1 chemicals (21 U.S.C. § 826; 21 C.F.R. §1310.02), under the Comprehensive Methamphetamine Control Act of 1996 ("CMCA"), 21 U.S.C. § 802, et seq., and under the Methamphetamine Anti-Proliferation Act of 2000

("MAPA"), Pub. L. No. 106-310, 114 Stat. 1277 (2000), and their respective implementing regulations. More recently, Congress added restrictions on ephedrine in the USA Patriot Improvement and Reauthorization Act of 2005, Title VII, entitled "Combat Methamphetamine Epidemic Act of 2005" ("CMEA"), Pub. L. No. 109-177 (enacted on March 9, 2006, amending the CSA).

14.    Novelty first registered as a distributor of scheduled listed chemical (SLC) products containing ephedrine and pseudoephedrine in approximately 1996.

15.    Novelty renewed its registration each year following its initial registration including for the 2007-2008 year. Novelty's registration was valid until October 31, 2008.

16.    In 2004, Novelty filed suit in the U.S. District Court for the Northern District of Indiana, Novelty vs. Keisler, challenging a DEA letter implementing restrictions on shipping SLCs.

17.    On January 29, 2007, Novelty filed suit in the U.S. District Court for the District of Columbia, Novelty v. Tandy, challenging DEA's denial of a Letter of No Objection to Novelty's contract manufacturer for the importation of bulk ephedrine necessary to manufacture Novelty's ephedrine SLC products.

18.    On July 5, 2007, Novelty requested an administrative hearing on an order to show cause denying Novelty and its contract importer, Spirit Pharmaceuticals, a LONO (Letter of No Objection), and on August 8, 2007, DEA denied Novelty a hearing on that decision, resulting in an appeal by Novelty to the U.S. Court of Appeals, District of Columbia Circuit (Case no. 07-1334, docketed on August 23, 2007).

19.    Beginning on July 9, 2007 and continuing for multiple days, DEA conducted an inspection of Novelty's Greenfield Indiana headquarters.

20.    On January 23, 2008, Novelty filed a Petition for Review in the Court of Appeals for the District of Columbia seeking appellate review of DEA's Annual Assessment of Needs.  Novelty contested DEA's determination of certain ephedrine and pseudoephedrine data used to factor the Annual Assessment of Needs ("AAN") for ephedrine products.

21.    On January 28, 2007, less than one week after receiving Novelty's petition for appellate review, representatives from DEA's Chicago Field Office of Diversion Investigation appeared at Novelty's Greenfield, Indiana facilities and served an order to show cause and immediate suspension of Novelty's DEA registration.  A copy of that document is attached as Exhibit 1.

22.    DEA has placed Novelty's list 1 chemical inventory under seal, locking it in Novelty's warehouse facility.

23.    Novelty's inventory of list 1 chemicals held under seal is sizable and represents a substantial investment of capital.

24.    Novelty endeavors to cooperate with DEA and has offered to accept several conditions on its registration to accommodate DEA concerns, but DEA has chosen instead to suspend Novelty's registration.

### CAUSE OF ACTION 1:  DEA'S IMMEDIATE SUSPENSION ORDER VIOLATES THE APA AND THE DUE PROCESS CLAUSE

25.    Novelty re-alleges the allegations contained in paragraphs 1 through 24 above.

23.     DEA acted arbitrarily, capriciously, and in violation of Novelty's Due Process rights by issuing an immediate suspension order without demonstrating that Novelty's continued registration posed an imminent harm to the public.  See 21 U.S.C. § 824 (d); Norman Bridge Co. v. Banner, 529 F.2d 822 (5th Cir. 1976).

24.     All eight grounds in the order to show cause and immediate suspension order fail on the facts and as alleged to constitute an imminent threat to public health and safety necessary to justify the immediate suspension.

25.     First, the Deputy Administrator charges Novelty with violating 21 USC 822(c); 21 CFR 1309.21 and 1309.23(a);(b)(1) on the argument that Novelty's route sales professionals distribute SLCs from unregistered locations.  Exhibit 1 at 1.  Novelty Transportation carries all Novelty products, including SLCs, from Novelty's DEA registered plant to locations at which the contents are off-loaded from Novelty trucks and put onto Novelty route sales professionals' trucks for ultimate delivery to convenience stores.  All of the inventory remains under Novelty control and is not taken off of Novelty's trucks except to be put on other Novelty trucks.  SLC goods are not stored at those locations.  Moreover, the facts of this allegation have been the subject of litigation, currently ongoing, between the parties since 2004 in Novelty v. Kiesler in the United States District Court for the Northern District of Indiana.  Thus, this allegation does not present an imminent danger to the public health and safety.

26.     Second, the Deputy Administrator charges Novelty with distributing 22 bottles of ephedrine products found by DEA in a Connecticut meth lab in 2002, six years ago. Although DEA has not provided Novelty with any of the evidence upon which this charge is based (itself a violation of Due Process and abuse of agency discretion),

Novelty is prepared to respond to the charge concerning the 22 bottles with the results of its own investigation.  The 22 bottles of ephedrine found in the Connecticut meth lab were **not** the Novelty brand.  They were the brand of DMD Pharmaceuticals.  DMD Pharmaceuticals did work as a contract manufacturer from which Novelty purchased products prior to introducing its own private label brand.  The 22 bottles bore the label of DMD Pharmaceuticals and a single lot number.  Novelty has seen no proof that the entire production by DMD Pharmaceuticals bearing that lot number was sold to Novelty or in particular, that the 22 bottles in question, were ever actually in Novelty's possession, as opposed to stolen from DMD.  Thus, that allegation is not capable of supporting a claim that Novelty's continued registration represents any present, imminent danger to public health and safety.

27.     Third, the Deputy Administrator charges Novelty with selling quantitative amounts of SLCs in excess of that appropriate to meet legitimate, therapeutic demand. Emory University Professor of Law and Economics Joanna Sheppard has established that the empirical evidence of the incidence of asthma and upper respiratory infections and ailments in the United States establishes a level of demand far higher than DEA supposes exists.  Jonathan Robbin, upon whom DEA relies, has grossly underestimated demand through a flawed analysis.  Based on an analysis of real market demand, Shepherd proves groundless the contention that the aggregate amounts Novelty sells are in excess of legitimate demand.  Thus, that allegation is not capable of supporting a claim that Novelty's continued registration represents an imminent danger to public health and safety.

28.    Fourth, the Deputy Administrator charges that some of Novelty's retail store customers may have sold amounts in single transactions in excess of the per person sales limits specified in the Combat Methamphetamine Act (incorporated into the CSA). Novelty has never authorized or condoned the sale of any SLCs to consumers in amounts that exceed lawful limits. If DEA has evidence of specific customers of Novelty who are violating the law, it does not give that information to Novelty except on rare occasions. If DEA had given Novelty that information, it would cut off sales to the store or stores in question. Shortly after passage of the Combat Meth Act, Novelty produced an educational video series for all of its retail customers. That expensive, serious campaign to educate retailers shows that Novelty is doing its best to maximize the likelihood that those to whom it sells understand and follow the law. Because, like most distributor registrants, Novelty does not own, operate, or control the retail stores it serves, it cannot *force* the stores to follow the law but it can refuse to supply ones that do not. Thus, that allegation is not capable of supporting a claim that Novelty's continued registration represents an imminent danger to public health and safety.

29.    Fifth, the Deputy Administrator charges that Novelty has failed to keep accurate records as required in 21 USC 823 and 824. In particular, DEA alleges that 60,000 dosage units of two Novelty ephedrine products are unaccounted for and that overages for 16 different SLCs exist. DEA's reviewers left out several data entries which, when included, show the 60,000 dosage unit figure and the overages to be erroneous. The problem is complicated further by basic math errors that the reviewers made. Thus, that allegation is not capable of supporting a claim that Novelty's continued registration represents an imminent danger to public health and safety.

30.    DEA alleges that between January 1, 2007 through July 9, 2007 Novelty distributed SLC products on at least 284 occasions to 35 retail outlets that were not self certified under 21 U.S.C. 830(e)(1)(A)(vii) and that distributing SLC products to retailers that are not self-certified is conduct that "is inconsistent with the public interest." Exhibit 1 at 2. The charge is false. Before Novelty contracts with any convenience store for sale of SLCs, Novelty insists on confirmation of self-certification. Every one of the 35 stores in question has given Novelty assurance of self-certification. From January 1 to July 9, 2007, all 35 allegedly not self-certified were in fact self-certified. Moreover, if DEA were right in the charge, if one or more of Novelty's customers had in fact not filed the self-certification but confirmed the contrary to Novelty, Novelty would cut off that customer. But, DEA has never apprised Novelty of the names of any retail outlets it has served that DEA deemed not self-certified. The contention first appears in the Show Cause Order. Moreover, there is neither a statutory nor regulatory requirement that distributors determine if retailers, holding themselves out as self certified, actually are. Indeed, DEA's failure to maintain the self-certification filing system has made it difficult for retailers to obtain their own verifications and DEA does not provide access to its records of retailers that have filed. Thus, this allegation is not capable of sustaining the conclusion that Novelty's continued registration is an imminent threat to public health and safety.

31.    Seventh, DEA alleges that Novelty distributed 24 count bottles of scheduled listed chemical products on three occasions to retail outlets after February 1, 2007 in violation of the statutory requirement that all non-liquid SLC products be sold in blister packs containing no more than two dosage units per blister. Novelty in fact did

not sell any 24-count bottles of SLCs after April 9, 2006.  Indeed, it returned products to the manufacturer, last shipped the product to Novelty sales people more than 13 months prior to the alleged sale, and has confirmed with each location that none has record of the alleged retail sales transactions.  Thus, this allegation is not capable of sustaining the conclusion that Novelty's continued registration is an imminent threat to public health and safety.

32.     Eighth, the Deputy Administrator charges that Novelty distributed tablet form scheduled listed chemical products to retail outlets in two states, Kentucky and North Carolina, that prohibit the sale of non-liquid ephedrine and pseudoephedrine except in a gel-cap product.  Novelty did not sell any tablet form SLCs in retail outlets located in Kentucky and North Carolina in violation of state law.  The last time product was shipped was 13 months prior to the alleged sale, and Novelty's customers have confirmed that they have no sales transactions for those items.  Thus, this allegation is not capable of sustaining the conclusion that Novelty's continued registration is an imminent threat to public health and safety.

33.     On the foregoing facts, DEA lacks proof of any imminent danger to public health and safety.  DEA's evidence does not justify DEA's destruction of Novelty's business and DEA's forced unemployment of Novelty's workforce.   Thus the immediate suspension is arbitrary and capricious agency action and should be set aside in accordance with 5 U.S.C. § 706 (2)(b), the Administrative Procedure Act.

34.     Novelty has a liberty and property interest in its continued registration as a SLC distributor.  DEA suspended Novelty's registration without the requisite statutory

burden of showing imminent harm.   Only showing imminent harm could justify deprivation of Novelty's liberty and property interest without due process of law.

35.    DEA has unlawfully suspended Novelty's registration without providing Novelty an opportunity to challenge the suspension as required by the Administrative Procedure Act and the Due Process Clause of the United States Constitution.  See 5 U.S.C. § 706 (2); U.S. CONST. amend. V.   The suspension of Novelty's registration has a stigmatizing effect on Novelty's reputation in the industry that is depriving Novelty of the economic value of its property and is destroying Novelty's business, substantially diminishing it ability to compete in novelty item sales.

### CAUSE OF ACTION 2:  DEA VIOLATES NOVELTY'S DUE PROCESS RIGHTS BY DENYING NOVELTY A FAIR HEARING

36.  Novelty re-alleges the allegations contained in paragraphs 1 though 35 above.

37.  DEA deprives Novelty of its right to Due Process because Novelty is not being provided a "fair" and "impartial" hearing as required by DEA regulations, the Administrative Procedure Act, and the Due Process clause of the United States Constitution.  See 21 C.F.R. § 1316.52 (requiring "fair" hearing); 5 U.S.C. § 556 (b); U.S. CONST. amend. V.

38.  Novelty's hearing at the administrative level is overrun with prejudgment bias.  DEA's system of adjudication in convenience store cases suffers from a lack of impartiality because the Administrator is intent on eradicating, in an anticompetitive manner, lawful sales of SLC products in convenience store markets, but permitting continuation of those sales in pharmacies, big box stores, and grocery stores.  The Administrator has predetermined facts at issue in Novelty's case, rendering impossible a

fair hearing on the merits.  Accordingly, Novelty cannot receive a fair hearing as guaranteed by the Due Process.

39.  The Administrator lacks sufficient separation between her roles as an investigator, prosecutor, and judge of Novelty's matter now before her.  The Administrator issued the Order to Show Cause and will now preside over the final determination regarding whether the government meets its burden by a preponderance of the evidence.  This unbridled discretion, lack of separation between roles, and Administrator bias violate the Due Process clause.  See Withrow v. Larkin, 421 U.S. 35, 57-58 (1975) (combination of functions plus additional showing of bias violates due process).

**CAUSE OF ACTION 3:  DEA VIOLATED NOVELTY'S FIRST AMENDMENT RIGHT TO MAKE A CONTEMPORANEOUS RECORD**

40.  Novelty re-alleges the allegations contained in paragraphs 1 through 39 above.

41.  DEA violated Novelty's rights under the First Amendment to the United States Constitution by preventing Novelty from recording the DEA agents execution of the July 2007 administrative search warrant.

42.  A party has an absolute First Amendment right to videotape inspections including those involving law enforcement activities.  See Robinson v. Fetterman, 378 F.Supp. 2d 534, 541 (E.D. Pa. 2005).  By preventing Novelty from videotaping the events occurring at Novelty's own business location, DEA violated Novelty's right to obtain a contemporaneous record.

43.  Videotaping of the execution of an administrative search warrant is a protected right under the First Amendment.  Denying that right also has the effect in this

case of obstructing the effective representation of counsel by denying counsel a complete contemporaneous record of the events taking place.

44.  DEA agents possessed no blanket regulatory authority, rule, or court order permitting them to take custody of, interfere with, or halt the making of such a record. Yet DEA agents twice took custody of Novelty's video-recording equipment when Novelty representatives attempted to record the events as they transpired.

**RELIEF REQUESTED**

45.  Plaintiffs respectfully request that this Honorable Court:

46.  **<u>Declare</u>** in accordance with 28 U.S.C. § 2201 that Novelty has a right to continue distributing ephedrine products during the pendency of the administrative process, and before DEA has proven by a preponderance of the evidence that Novelty's registration is against the public interest.

47.  **<u>Declare</u>** in accordance with 28 U.S.C. § 2201 that DEA's immediate suspension of Novelty's registration was arbitrary and capricious in violation of the APA because DEA cannot establish that Novelty's continued registration during the administrative process is against the public interest.

48.  **<u>Declare</u>** in accordance with 28 U.S.C. § 2201 that DEA violates Novelty's right to Due Process by failing to provide a fair and impartial hearing to determine Novelty's registration status as required under DEA regulations, the APA, and the United States Constitution.

49.  **<u>Declare</u>** in accordance with 28 U.S.C. § 2201 that DEA violated Novelty's First Amendment right to obtain a contemporaneous record of events for itself and the public during DEA's execution of the July 2007 administrative search warrant.

50. **Enjoin** DEA from enforcing the immediate Order of Suspension issued January 17, 2008 that immediately suspended Novelty's DEA registration to distribute scheduled listed chemicals.

51. **Enjoin** DEA from conducting a hearing at the administrative level, under 21 U.S.C. § 824, that violates Novelty's Due Process rights because of undue prejudgment bias.

## TRIAL REQUEST

Consistent with 28 U.S.C. § 2402, Novelty hereby requests a trial without a jury.

Respectfully submitted,

NOVELTY, INC.,

_____

Jonathan W. Emord, (DC Bar 407414)
Andrea G. Ferrenz, (DC Bar 460512)
Peter A. Arhangelsky
Attorneys for Plaintiff

Emord & Associates, P.C.
11808 Wolf Run Lane
Clifton, VA 20124
Ph: (202) 466-6937
Fx: (202) 466-6938
jemord@emord.com

Dated: April 9, 2008

U.S. Department of Justice

Drug Enforcement Administration

_Office of the Deputy Administrator_                                    _Washington, D.C. 20537_

## IN THE MATTER OF

Novelty Distributors
d/b/a Greenfield Labs
351 West Muskegon Drive
Greenfield, Indiana 46140

## ORDER TO SHOW CAUSE AND
## IMMEDIATE SUSPENSION OF REGISTRATION

**PURSUANT** to Sections 303 and 304 of the Controlled Substances Act, Title 21, United States Code, Sections 823 and 824,

**NOTICE** is hereby given: (1) to inform Novelty Distributors, d/b/a Greenfield Labs ("Novelty"), of the immediate suspension of its Drug Enforcement Administration (DEA) Certificate of Registration, 003563NSY, as a distributor of list I chemicals, because such registration constitutes an imminent danger to the public health and safety, pursuant to 21 U.S.C. § 824(d); and (2) to afford Novelty an opportunity to Show Cause before DEA, at 600 Army Navy Drive, Arlington, Virginia, on March 24, 2008, at 9:00 a.m., as to why DEA should not revoke its registration pursuant to 21 U.S.C. § 824(a)(4), and deny any pending applications for renewal or modification of such registration pursuant to 21 U.S.C. § 823(h), because Novelty's continued registration is inconsistent with the public interest, as that term is used in 21 U.S.C. §§ 823(h) and 824(a)(4). The basis for this Order to Show Cause and Immediate Suspension of Registration is set forth in the following non-exhaustive summary of facts.

1. Novelty is registered with DEA as a distributor of the List I chemicals pseudoephedrine and ephedrine under DEA number 003563NSY, and its sole DEA registered location is 351 W. Muskegon Drive, Greenfield, Indiana 46140. Novelty's current DEA registration expires on October 31, 2008.

2. Novelty distributed, and continues to distribute, List I chemicals (specifically, scheduled listed chemical products) from over 100 unregistered locations in violation of 21 U.S.C. § 822(e) and 21 C.F.R. §§ 1309.21 and 1309.23(a). Novelty stores scheduled listed chemical products at unregistered storage facilities and other locations throughout the United States. Novelty's employees or agents then distribute scheduled listed chemical products directly from these unregistered locations to regulated sellers. Violating Federal laws relating to the handling of List I chemicals is conduct that is inconsistent with the public interest. See 21 U.S.C. §§ 823(h)(2) and 824(a)(4).

3. Novelty has distributed, and continues to distribute, large quantities of scheduled listed chemical products to small retail outlets such as convenience stores. The quantity of scheduled listed chemical products that Novelty sells to some convenience stores far exceeds what those retail outlets could be expected to sell for legitimate, therapeutic purposes. The scheduled listed chemical products distributed by Novelty in large quantities have been, and are likely to continue being, diverted to the clandestine manufacture of methamphetamine as indicating by following non-exhaustive facts:

    a. In November 2002, 22 bottles of ephedrine products distributed by Novelty were found at an illicit methamphetamine laboratory in Connecticut.

    b. Small retail outlets that receive large quantities of scheduled listed chemical products from Novelty sell such products to individuals in amounts that cannot be attributed to legitimate individual needs. For example, some of the retail outlets allow customers to make multiple purchases of scheduled listed chemical products within a single week, and in some cases, within a single day. Some customers of these retail outlets purchased more than 9 grams of ephedrine or pseudoephedrine base within 30 days in violation of 21 U.S.C. § 844(a).

Excessive sales of scheduled listed chemical products that are or may be diverted to the clandestine manufacture of methamphetamine is conduct that is inconsistent with the public interest. See 21 U.S.C. §§ 823(h)(1), 823(h)(5) and 824(a)(4); *T. Young Associates, Inc., Revocation of Registration*, 71 Fed. Reg. 60,567 (2006); *Holloway Distributing; Revocation of Registration*, 72 Fed. Reg. 42,118 (2007); *Planet Trading, Inc.: d/b/a/ United Wholesale Distributors, Inc.: Denial of Application*, 72 Fed. Reg. 11,055 (2007).

4. In July 2007 DEA conducted an audit of Novelty's records and inventory for 20 scheduled listed chemical products distributed by Novelty. Novelty could not account for more than 60,000 dosage units of two ephedrine products. The audit also revealed overages for 16 different scheduled listed chemical products. Novelty failed to maintain accurate records of its distributions and receipts of scheduled listed chemical products in violation of 21 U.S.C. § 830(a) and 21 C.F.R. § 1310.04. Failure to comply with the record keeping requirements of Federal law is conduct that is inconsistent with the public interest. See 21 U.S.C. §§ 823(h)(2) and 824(a)(4).

5. From January 1, 2007, through July 9, 2007, Novelty distributed scheduled listed chemical products on at least 284 occasions to 35 retail outlets that were not self-certified under 21 U.S.C. § 830(e)(1)(A)(vii). Regulated sellers must be self-certified in order to sell any scheduled listed chemical product at retail. See 21 USC § 830(e)(1)(B)(i). Distributing scheduled listed chemical products to retail outlets that are not self-certified, and therefore cannot lawfully sell scheduled listed chemical products, is conduct that is inconsistent with the public interest. See 21 U.S.C. §§ 823(h)(2), 823(h)(5) and 824(a)(4).

6. Novelty distributed 24-count bottles of scheduled listed chemical products on three occasions to retail outlets after February 1, 2007. As of April 9, 2006, non-liquid schedule listed chemicals could not be lawfully sold at retail except when packaged in blister packs containing

no more than two dosage units per blister. See 21 U.S.C. § 830(d)(2). Distributions of 24-count bottles of scheduled listed chemical products to retail outlets that cannot lawfully sell bottles of such products is conduct that is inconsistent with the public interest. See 21 U.S.C. §§ 823(h)(5) and 824(a)(4).

7. Novelty distributed tablet form scheduled listed chemical products to retail outlets located in two states, Kentucky and North Carolina, that prohibit the sale of non-liquid ephedrine and pseudoephedrine except in a gel-cap product. Distribution of scheduled listed chemical products in violation of state law is conduct that is inconsistent with the public interest. See 21 U.S.C. §§ 823(h)(2) and 824(a)(4).

IN view of the foregoing, and pursuant to 21 U.S.C. § 824(d), I find that the scheduled listed chemical products distributed by Novelty have been, and are likely to continue to be, diverted into the illicit manufacture of methamphetamine. Novelty has failed to maintain effective controls against such diversion as required by 21 U.S.C. § 823(h)(1). Novelty's failure to maintain effective controls against diversion, including its distribution of large amounts of scheduled listed chemical products that far exceed legitimate demand, contribute to the illicit manufacture of methamphetamine. The illegal manufacture and abuse of methamphetamine pose a grave threat to public health and safety.

Therefore, it is my preliminary conclusion that Novelty's continued registration during the pendency of these proceedings would constitute an imminent danger to the public health and safety. Pursuant to the provisions of 21 U.S.C. § 824(d) and 21 C.F.R. 1309.44(a), and the authority granted to me under 28 C.F.R. §§0.100 and 0.104, DEA Certificate of Registration 003563NSY is hereby suspended, effective immediately, with said suspension to remain in effect until a final determination is reached in these proceedings.

Pursuant to 21 U.S.C. § 824(f) and 21 C.F.R. § 1309.44(b), the Special Agents and Diversion Investigators of the DEA who serve this Order to Show Cause and Immediate Suspension of Registration are authorized to place under seal and to remove for safekeeping all listed chemicals which Novelty possesses pursuant to the registration which I have herein suspended. The said Agents and Investigators are also directed to take into their possession Novelty's DEA Certificate of Registration.

THE following procedures are available to Novelty in this matter:

1. Within 30 days after the date of receipt of this Order to Show Cause and Immediate Suspension, Novelty may file with the Deputy Administrator of the DEA a written request for a hearing in the form set forth in 21 C.F.R. § 1316.47. See 21 C.F.R. § 1309.46(d). If Novelty fails to file such a request, the hearing set for March 24, 2008, shall be cancelled in accordance with paragraph 3 below.

2. Within 30 days after the date of receipt of this Order to Show Cause and Immediate Suspension of Registration, Novelty may file with the Deputy Administrator a waiver of hearing together with a written statement regarding Novelty's position on the matters of fact and law involved. See 21 C.F.R. §1309.53(b).

3

3.  Should Novelty decline to file a request for a hearing or, should it request a hearing and then fail to appear at the designated hearing, Novelty shall be deemed to have waived the hearing and the Deputy Administrator may cancel such hearing, and may enter her final order in this matter without a hearing and based upon the investigative file and the record of this proceeding as it may then appear.  *See* 21 C.F.R. §§ 1309.53(c) and (d).

Correspondence concerning this matter, including requests referenced in paragraphs 1 and 2 above, should be addressed to the Hearing Clerk, Office of Administrative Law Judges, Drug Enforcement Administration, Washington, D.C. 20537.  Matters are deemed filed upon receipt by the Hearing Clerk.  *See* 21 C.F.R. § 1316.45.

Michele M. Leonhart    1/17/08
Deputy Administrator

cc:  Hearing Clerk
     Office of Administrative Law Judges

4

**I (a) PLAINTIFFS**

Novelty, Inc., d/b/a Greenfield Labs
351 W. Muskegon Drive
Greenfield, IN  46140

**DEFENDANTS**

Michele Leonhart, in her official capacity as Acting Administrator of the Drug Enforcement Administration; Drug Enforcement Administration; U.S. Department of Justice; Michael B. Mukasey, in his official capacity as the Attorney General of the United States of America

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**    88888
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    110001
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Jonathan W. Emord (DC Bar 407414)
Andrea G. Ferrenz (DC Bar 460512)
Emord & Associates
11808 Wolf Run Lane
Clifton, VA  20124

**ATTORNEYS (IF KNOWN)**

---

**II. BASIS OF JURISDICTION**
(PLACE An x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
◉ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

◉ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

○ **E.** *General Civil (Other)*    **OR**    ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

21 USC §824, 5 U.S.C. § 706, DEA acted arbitrarily and capriciously in suspending Novelty's registration, in violation of the APA, CSA and 5th amendment

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 ☐   **DEMAND $** [_____]   Check YES only if demanded in complaint   **JURY DEMAND:** YES ☐ NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction) YES ☐ NO ☐   If yes, please complete related case form.

DATE  April 9, 2008     SIGNATURE OF ATTORNEY OF RECORD  _(signature)_

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.