UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

NOVELTY DISTRIBUTORS, INC.,
D/B/A GREENFIELD LABS,
                Plaintiff,

v.

MICHELE LEONHART,
In her official capacity as
Acting Administrator of the
Drug Enforcement Administration; et al,

                Defendants.

Case No. 08cv00635 (RMC)

### NOVELTY'S REPLY TO GOVERNMENT'S OPPOSITION (STYLED, "RESPONSE") TO MOTION FOR EXPEDITED CONSIDERATION OF PLAINTIFF'S PRELIMINARY INJUNCTION MOTION

Novelty Distributors Inc. (hereinafter "Novelty"), by counsel, hereby files its reply to what the Government styles its "Response" (albeit, that "Response" is not the end of the pleading cycle but is technically an Opposition under the rules, Local Civil Rule 7(d) to "Plaintiff's Motion for Expedited Consideration of Plaintiff's Preliminary Injunction Motion" filed May 23, 2008.[1]

The Government Opposition is an unauthorized pleading filed without leave of Court. It comes after this Court ruled sua sponte by Minute Order, dated May 27, 2008, that it would postpone consideration of the motion for expedited consideration pending its resolution of the jurisdiction issue ( "[t]he Court will decide Plaintiff's motion for expedited action regarding Plaintiff's motion for preliminary injunction when it becomes ripe, but neither grants nor denies the motion at this time"). Accordingly, the Government's Opposition may be summarily dismissed as unauthorized without need to

---

[1] Consistent with the rules, Novelty hereinafter refers to the Government pleading as "Opposition".

consider this Reply. Assuming, arguendo, that the Government's Opposition is not dismissed, we proffer this Reply.

In response to Novelty's Motion for Summary Judgment on Jurisdiction or, in the Absence thereof, for Immediate Transfer to the U.S. Court of Appeals for the DC Circuit, this Court issued an Order to Show Cause, dated June 5, 2008, compelling the Government to explain why that motion ought not be granted. On the heels of that latter Order, the Government filed its Opposition to the pleading held in abeyance by the Court, reacting more to the Court's Order to Show Cause by supplying additional argument germane to that than to the motion held in abeyance. The legerdemain appears designed to get yet another unauthorized opportunity for argument and should not be countenanced.

Out of an abundance of caution, if the Court elects not to dismiss summarily the unauthorized Opposition, Novelty files its reply to the arguments and misrepresentations of fact therein.

First, consider the remarkable admissions in the Government's Opposition. In the Opposition, the Government states that it "expresse[s] no opinion on how quickly this Court should decide this fully briefed motion other than to say that Novelty's…reason…is insufficient." In addition to, essentially, having no objection to expedited ruling, DEA also admits that jurisdiction is not an impediment to this Court ruling on the motion for preliminary injunction. DEA Response at Footnote 5. Thus, its prior demand for no expedition and its prior contention that further briefing was needed on jurisdiction appear to have been removed, inviting prompt action on the motion for preliminary injunction.

Second, although the DEA ALJ held the public interest served by Novelty's continued registration (implicit in which is the determination that the public health or safety is not jeopardized thereby), the Government selectively excerpts passages therefrom and attributes to the decision meaning, that were it true, would necessarily have resulted in a decision by the ALJ against Novelty (a complete flip by Government counsel from reality).

In the DEA ALJ's decision, she weighed and evaluated under the public interest standard in 21 USC 823(h) all factors necessary to determine if the public health or safety would be jeopardized by continued registration of Novelty and concluded that, evaluating all five statutory factors, they on balance favored continued registration. ALJ May 21, 2008 decision at 100-101. Every point that the Government depends upon to suggest an imminent danger to public health or safety she rejected. That same evidence this Court will consider in determining whether the DEA satisfied its statutory burden of establishing that the public health or safety was in imminent danger such that the suspension order was properly issued under 21 USC 824 (d).

Shameless, the Government once again misrepresents to the Court the legal standard applicable to evaluation of immediate suspension orders. It ignores the statutory condition precedent to issuance that there be an "imminent danger to the public health or safety" to justify the circumvention of due process and issuance of the immediate suspension order. 21 USC 824(d). Instead, the Government argues the standard is whether DEA acted arbitrarily and capriciously (the APA standard not in issue) in suspending Novelty's registration based on the information before it at the time of the suspension. That is not the standard applied by this court under standing precedent.

Norman Bridge Drug Co., 529 F.2d 823-824, 828-289; Neil Laboratories v. Ashcroft, 217 F.Supp.2d 80, 85 (D.D.C. 2002). That issue has been fully briefed and so Novelty will not belabor the point, referring the court to the motion for preliminary injunction briefing.

As remarkable as the repeated failure to admit the controlling legal standard is the Government's purposeful distortion of the content of the ALJ decision:

- The Government submits that the ALJ found "(i) that the records Novelty produced to DEA 'appear to reveal significant overages and shortages of SLC products.' (ALJ Rec. Dec. at 99)." Not so. In fact, the ALJ stated the contrary proposition: "Although the records appear to reveal significant overages and shortages of SLC products from the DEA's audit, the Respondent credibly and adequately minimized those figures to a more acceptable margin of inventory error after analyzing its records and making its own audit findings." Id. (emphasis added). The omitted text is so clearly favorable to Novelty that the Government's failure to include it is a misleading, material omission to this Court.

- The Government submits that the ALJ found "(ii) that it was 'significant' that Novelty's 'suppliers' summaries did not match [Novelty's] purchase records for purchases made during the audit time period' (ALJ Rec. Dec. at 87, n.37)." Not so. In fact, the ALJ stated in that same footnote: "I do find it significant in weighing the evidence, that, in the record of this matter, the suppliers' purchase summaries were not supported by invoices. The extent to which those summaries are reliable and actually comport with purchases made and delivered during the audit time frame remains unknown." Id. In that quote the ALJ is criticizing DEA's evidence, not Novelty's. Moreover, much of the text the Government says it is quoting from that footnote simply does not appear there (it is whole cloth creationism). The Government's representation of the contents of the ALJ's footnote is another false representation to this Court.

- The Government submits that the ALJ found "(iii) that the records Novelty produced to DEA 'appear to indicate that the Respondent improperly sold tablets and bottled SLC products, and sold SLC products to stores that were not self-certified' (ALJ Rec. Dec. at 99)." Not so. In fact, the ALJ stated, "Although the records appear to indicate that the Respondent improperly sold tablets and bottled SLC products, and sold SLC products to stores that were not self-certified, the Respondent's investigation and explanation of the facts involved in those transactions were credible. Also the Respondent's actions to upgrade its computer

system demonstrated the Respondent's intentions to comply with the DEA's statutes and regulations." Id.  Moreover, she concluded, "I conclude that a preponderance of the evidence does not support a conclusion that the Respondent sold SLC product to convenience stores that were not self-certified." ALJ Rec. Dec. at 91. Again, the omitted text is so clearly favorable to Novelty that the Government's failure to include it is a misleading material omission to this Court.

- The Government submits that the ALJ found "(iv) that Novelty's practice of storing controlled substances at unregistrered drop off points 'appeared to blatantly disobey a DEA directive," and that Novelty's obstinance [counsel's word, not the ALJ's] 'continues to cause concern.' (ALJ Rec. Dec. at 90, 100)."  In fact, the ALJ stated, "Although the Respondent's actions appeared to blatantly disobey a DEA directive in the Raber letter, its actions to seek judicial interpretation were legitimate…This lack of compliance in the interim continues to cause concern.  Yet, the DEA's Raber letter was issued in 2004, and the DEA continued renewing this Respondent's DEA registration through 2007.  Except for the Raber letter, this Respondent had no notice from the DEA of any violations until the Immediate Suspension Order was served in 2008."  Yet again, the omitted text is so clearly favorable to Novelty.  The Government's failure to include it is a misleading, material omission to this Court.

- The Government submits that the ALJ found "(v) that Novelty's 'lack of accountability' with respect to distribution and inability to track controlled substances it distributed was 'troubling' (ALJ Rec. Dec. at 85)."  The ALJ actually stated, "As evidence by the problems encountered in 2002 when the Respondent attempted to track the delivery of SLC products it received from DMD, the Respondent can only track the products [by batch numbers] to a route and sales representatives…This lack of accountability of SLC product is troubling.  However, the Respondent has taken numerous precautions to justify entrusting its sales representatives with this much authority in choosing where to distribute SLC products."  Id.  Moreover, batch number tracking to individual store customers is not a requirement of the Controlled Substances Act.  See 21 CFR § 1310.06 (content of records required to be kept does not include batch number tracking).  The Government brazenly yet again omits text clearly favorable to Novelty, and the Government's failure to include it is a misleading, material omission to this Court.

- The Government submits that the ALJ found "(vi) that Novelty's 'recordkeeping is not adequate to conduct an effective audit of its SLC products' (ALJ Rec. Dec. at 88)."  In fact, the ALJ stated "based on the evidence in this record, this audit does not present preponderating evidence either way to assist in analyzing the accuracy of the Respondent's handling of SLC products.  However, it strongly supports a

conclusion that the Respondent's recordkeeping is not adequate to conduct an effective audit of its SLC products." Thus, the Government's selective quote is again a material omission.

- The Government submits that the ALJ found "(vii) that it was 'troubling' that the data provided by [Novelty] established that sales transactions over the [single-purchase volume] limit occurred 85 times between January and July of 2007, a fact which 'calls into question the deterrent effect of this sales limitation' (ALJ Rec. Dec. at 88-89)." DEA omitted to the court the material fact that the limit being discussed is <u>Novelty's</u> <u>self-imposed</u> <u>corporate</u> <u>policy</u> of a one case limit on sales to stores, not a legal limit under the CSA. <u>Id.</u> ("Respondent implemented a limit on the quantity of SLC products a convenience store may purchase in any single transaction.") DEA's quote does not refer to violation of any of the limits imposed by the Controlled Substances Act. That is a material omission. Moreover, as Novelty explained in its exceptions to the ALJ decision, DEA's evidence of 85 violations of Novelty's own corporate policy was based on the DEA agent involved misinterpreting the policy to apply to all packages of product, when in fact it only applied to 24 count packages. Thus the 85 figure is inaccurate.

- DEA quoted, "(viii) that Novelty employees received higher commissions on sales of controlled substances, giving Novelty employees 'an economic motive to sell as much of [certain controlled substances] as possible, and thereby exacerbating the problem caused by Novelty salespersons' 'somewhat questionable enforcement' of single-purchase volume limits (ALJ Rec. Dec. at 89)." In fact, the ALJ stated "[Novelty's] sales representatives receive a 5% commission on the sale of some SLC products. This would seem to provide the sales representatives with an economic motive to sell as much of this product as possible. This incentive, coupled with the somewhat questionable enforcement of the sales representatives' one case limit, causes concern." <u>Id.</u> The text "and thereby exacerbating the problem caused by Novelty salespersons" <u>does</u> <u>not</u> <u>appear</u> <u>in</u> <u>the</u> <u>actual</u> <u>text</u> although DEA presents it to the court as a quote! Moreover, as stated in the previous bullet, the one case limit is a Novelty corporate policy, not a limit imposed by law. That is material omission.

Were material omission and misrepresentation of this kind to have occurred in a single instance, it might be excused due to negligence or inadvertence. However, its repeat occurrence (some eight times in the Government's pleading) cannot be excused or condoned. Government Counsel seeks to mislead this Court, and this Court should be on

guard.  Simple reference to the full context of the ALJ Decision will reveal the untoward action and should yield a strong rebuke.  There is no defense, no justification one can conjure, to excuse false representations of fact to the Court.

Finally, Novelty asks this Court to ignore DEA's footnote presentation of a request for dismissal of certain claims (see DEA's Response at footnote 3) until that allegation is presented as a motion to dismiss fully plead in accordance with Local Civil Rule 7.  Novelty preserves its right to object to those arguments when Defendants present them to this Court for consideration as a motion in accordance with the local rules.

>Respectfully Submitted,
>
>_____/s/_____
>Jonathan W. Emord, (DC Bar 407414)
>Andrea G. Ferrenz, (DC Bar 460512)
>Attorneys for Plaintiff

Emord & Associates, P.C.
11808 Wolf Run Lane
Clifton, VA  20124
Ph:  (202) 466-6937
Fx:  (202) 466-6938
jemord@emord.com

Dated:  June 11, 2008