UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NOVELTY DISTRIBUTORS, INC., <br> D/B/A GREENFIELD LABS, <br><br> Plaintiff, <br><br> v. <br><br> MICHELE LEONHART, <br> In her official capacity as Acting Administrator <br> of the Drug Enforcement Administration, *et al.*, <br><br> Defendants. | No. CV 08-00635 (RMC) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

In its opposition to defendants' motion to dismiss, plaintiff Novelty Distributors ("Novelty") argued that jurisdiction is proper in this Court because it is not required to exhaust its administrative remedies before pursuing a judicial remedy for its First Amendment claim, notwithstanding the undisputed fact that Novelty's First Amendment claim arises out of agency action review of which remains pending before defendant Drug Enforcement Administration ("DEA"). Novelty further argued that jurisdiction is proper in federal district court, notwithstanding the direct review provision of § 21 U.S.C. § 877 because Novelty is asserting a First Amendment claim pursuant to 28 U.S.C. § 1331. On the merits, Novelty argues that it has stated a cognizable claim for relief because, according to Novelty, [a] party has an absolute First Amendment right to videotape inspections including those involving law enforcement activities." Compl. ¶ 42.

Novelty is wrong on both counts. Case law makes clear that the administrative exhaustion requirement applies to constitutional claims that arise out of agency action (here, DEA's administrative inspection of Novelty). Novelty's undisputed failure to exhaust its administrative remedies is fatal to its attempt to seek judicial review of its constitutional claim at this time in *any* court. And, even if Novelty had exhausted its administrative remedies (and thus received a final decision from the DEA), § 877 makes clear that judicial review of all of Novelty's claims would be proper only in the courts of appeals. Novelty fails even to attempt to respond as to why the bifurcated system of review it urges this Court to permit — with the attendant waste of resources and possibility for conflicting rulings — is justified. Accordingly, this Court should dismiss Novelty's First Amendment claim for lack of jurisdiction.

Apart from these jurisdictional deficiencies, Novelty has failed to state a viable First Amendment claim. The factual allegations in Novelty's complaint, as augmented by declarations Novelty submitted in conjunction with its motion for partial summary judgment on its First Amendment claim, fail to state a cognizable cause of action. In short, Novelty does not have a First Amendment right to videotape DEA officials as they were working in a conference room Novelty undisputedly set aside for them during the pendency of the administrative inspection. For these reasons, Novelty's First Amendment claim should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PROCEDURAL BACKGROUND

Novelty challenges DEA's suspension of Novelty's registration to distribute ephedrine and pseudoephedrine. In its complaint, Novelty seeks a declaratory judgment and injunctive relief reversing the DEA's suspension and reinstating its registration. Novelty further seeks a

declaration that DEA's refusal to allow Novelty to record its deliberations during the administrative inspection violated Novelty's First Amendment rights. In an effort to overturn DEA's suspension, Novelty requested preliminary injunctive relief pending the outcome of administrative proceedings.

By motion dated June 5, 2008, defendants moved to dismiss plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Before briefing was completed on defendants' motion to dismiss, and by Memorandum Opinion dated June 17, 2008, this Court held that it had jurisdiction to entertain Novelty motion for a preliminary injunction pursuant to 21 U.S.C. § 824(d). On the merits, however, this Court denied Novelty's request for preliminary injunctive relief.[1] Because Novelty did not request a preliminary injunction on the basis of its First Amendment cause of action, this Court's Memorandum Opinion did not address its jurisdiction over that claim. In light of this Court's denial of Novelty's preliminary injunction motion, the sole remaining question with respect to the pending motion to dismiss is whether jurisdiction is proper in this Court over Novelty's First Amendment claim, and if so, whether Novelty has stated a claim on which relief can be granted. For the reasons that follow, each of these questions must be answered in the negative.

**I.    ONLY THE COURT OF APPEALS HAS JURISDICTION TO HEAR NOVELTY'S FIRST AMENDMENT CLAIM BECAUSE IT IS INEXTRICABLY INTERTWINED WITH THE ADMINISTRATIVE SEARCH**

By Memorandum Opinion dated June 17, 2008, this Court determined that it had jurisdiction to entertain Novelty's motion for a preliminary injunction pursuant to 21 U.S.C.

---

[1]The Court's June 17, 2008 opinion did not address Novelty's First Amendment claim, as Novelty did not seek a preliminary injunction on that basis.

§ 824. As Novelty undisputedly did not seek a preliminary injunction on the basis of its First Amendment claim, § 824 affords no jurisdictional basis on which this Court might hear plaintiff's First Amendment claim. In light of the direct review provision of 21 U.S.C. § 877, Novelty bears the burden to show why jurisdiction is proper (i) in this district court (ii) prior to any final agency action.

In an effort to carry this burden, Novelty argues that its claims are properly brought in this district court under 28 U.S.C. § 1331. In our motion to dismiss, we argued that § 1331 must be interpreted in tandem with other statutes limiting district court jurisdiction, including the direct review provision at issue here. Otherwise, § 1331 would trump all other statutes in which Congress limited the subject matter jurisdiction of federal district courts, including those providing for direct review of agency action in the courts of appeals. *See* Defs'. Mem. in Support of Mot. to Dismiss at 14. We further argued that because the factual record on which Novelty seeks to rely in pursuing its First Amendment claim in this Court was developed entirely during agency proceedings, it is undeniable that Novelty's First Amendment claim may well go to the D.C. Circuit as part of any direct review appeal. *Id.* To avoid the undesirable prospect of duplicative and conflicting review, jurisdiction is proper only in the courts of appeals. *Id.* at 15.

In response, Novelty argues that "it is well-settled that constitutional violations by administrative agencies are immediately actionable in the federal courts without need to exhaust administrative remedies." Pls'. Opp. Mem. at 15. To begin with, this simply begs the jurisdictional question in issue here; namely, whether the *district court* is that federal court, or whether a direct review provision applies given that Novelty's constitutional claim is inextricably intertwined with agency action, judicial review of which is proper only in the courts of appeals

pursuant to 21 U.S.C. § 877.[2] As we stated in our opening memorandum, D.C. Circuit law is clear on this point that review of DEA action is proper only in the court of appeals. *See Telecommunications Research and Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("[A] statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute."); *see also id.* (holding that direct review provision operates to give courts of appeals exclusive jurisdiction over any claim that may "affect [the court of appeals'] future statutory review authority"); *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) ("In the absence of specific evidence of contrary congressional intent, however, we have held that review of orders resolving issues preliminary or ancillary to the core issue in a proceeding should be reviewed in the same forum as the final order resolving the core issue.").[3]

Equally important, plaintiff fails to acknowledge that the D.C. Circuit has repeatedly required claimants asserting constitutional claims to exhaust their administrative remedies as a prerequisite for judicial review. *See, e.g.*, *American Coalition for Competitive Trade v. Clinton*, 128 F.3d 761, 766 (D.C. Cir. 1997) ("Many agency adjudication schemes require petitioners to exhaust their administrative remedies before bringing their constitutional claims to Article III courts."); *Steadman v. Governor, United States Soldiers' & Airmens' Home*, 918 F.2d 963, 965 (D.C. Cir. 1990) (holding that "Federal Service Labor-Management Relations Act required

---

[2]Novelty correctly does not argue that DEA's interim suspension — agency review of which remains ongoing — constitutes final agency action. Thus, judicial review in *any* court is not proper at this time, let alone this District Court. *John Doe, Inc. v. Drug Enforcement Admin.*, 484 F.3d 561, 566 (D.C. 2007) (agency action not final if it is "of a merely tentative or interlocutory nature").

[3]This Court's June 17, 2008, Memorandum Opinion is not to the contrary, as it addressed only this Court's authority to review pre-hearing suspensions issued pursuant to § 824(d).

former federal employees who alleged that their discharge violated their due process and statutory rights to first seek statutory relief before the Federal Labor Relations Authority before pursuing" judicial remedy for constitutional claim).[4]  Even the cases on which plaintiff relies make clear that the mere allegation of a constitutional claim does not obviate the need for administrative exhaustion.  In *Sterling Drug, Inc. v. F.T.C.*, 450 F.2d 698 (D.C. Cir. 1971), the D.C. Circuit concluded that the district court judge correctly ruled that he did not have jurisdiction to decide plaintiff's due process claim, holding that:

> The Commission may reverse its position with regard to the issue before us or may eventually uphold the Sterling-Lehn & Fink merger.  If either event comes to pass, there will be no need for Sterling to seek judicial review.  If neither occurs, Sterling will be able to raise the due process issue on appeal from the Commission's final order in the case.  At that time we will have before us the entire record of the proceedings and the Commission's rulings and will thus be qualified to determine whether Sterling received a fair hearing.  This is not such a strictly legal question that it can be properly decided on the incomplete facts and argument now before us.

*Id.* at 712.[5]  Consistent with this reasoning, the DEA may well reverse its suspension decision of Novelty or speak to the conduct of its agents during the administrative search in its final decision.

---

[4]*See also National Treasury Employees Union v. King*, 961 F.2d 240, 243 (D.C. Cir. 1992) ("The fact that the NTEU's claim involves constitutional rights not adjudicable in the administrative hearing does not *per se* alter the exhaustion requirement.  This court has held that when an alleged constitutional violation is intertwined with a statutory one, and Congress has provided machinery for the resolution of the latter, the plaintiff must exhaust its administrative remedy before the district court may hear its case.") (internal quotations and citations omitted); *Cronin v. F.A.A.*, 73 F.3d 1126, 1133 (D.C. Cir. 1996); *Meredith Corp. v. F.C.C.*, 809 F.2d 863, 873-84 (D.C. Cir. 1987); *Wallace v. Lynn*, 507 F.2d 1186, 1189-90 (D.C. Cir. 1974) (all requiring claimant to pursue constitutional claim administratively as a prerequisite for judicial review).

[5]*See also Clinton*, 128 F.3d at 766 n.7 ("[T]he premise of administrative exhaustion requirements for petitioners with constitutional claims is that agencies may be able to otherwise address petitioners' objections, allowing the courts to avoid unnecessary constitutional decisions.").

If that happens, Novelty may not need to seek judicial review. Alternatively, if Novelty remains dissatisfied with DEA's final decision, it can petition the court of appeals for review. Either way, the fact that Novelty has not yet exhausted its administrative remedies is fatal to its attempt to have this Court review its constitutional claims at this time. *See Continental Air Lines, Inc. v. Department of Transp.*, 843 F.2d 1444, 1446 (D.C. Cir. 1988) (denying First Amendment claim due to failure to exhaust administrative remedies).

Furthermore, as we pointed out in our opening memorandum, Novelty's interpretation would effectively abrogate portions of the APA authorizing review of constitutional claims arising out of agency action. *See* Defs'. Mem. in Support of Mot. to Dismiss at 12; *also cf.* 5 U.S.C. § 706(2)(B) (authorizing a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be contrary to constitutional right . . . ."). Novelty offers no response to this, nor could it. Instead, Novelty simply assumes its conclusion that jurisdiction is proper in this Court based on its assertion that it is presenting "a constitutional claim under the First Amendment, not the APA." Pl's. Opp. Mem. at 15. Of course, any plaintiff can label a claim as constitutional, and with that label attempt to evade the review strictures the APA imposes. This Court should not permit this sort of transparent end run.

It is undisputed that Novelty's First Amendment claim arises out of DEA agency action (*i.e.*, the administrative search), judicial review of which is proper only in the courts of appeals.[6]

---

[6]Novelty cites *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518 (9th Cir. 1989), for the proposition that First Amendment claims are immediately actionable in federal district court. There, several INS agents infiltrated four Arizona churches and surreptitiously recorded church services. The investigations were conducted without search warrants and without probable cause to believe that the surveillance of the churches would uncover evidence of criminal activity. *Id.* at 520.

Novelty offers no reason why this Court should permit Novelty to split its claim, nor does it respond to defendants' argument that the parallel review process Novelty urges would lead to wasteful, duplicative, and possibly conflicting review.  For these reasons, Novelty has failed to carry its burden to show that jurisdiction is proper in this Court with respect to Novelty's First Amendment claim.

## II.    EVEN IF JURISDICTION IS PROPER IN THIS COURT, NOVELTY HAS FAILED TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED

Even if this Court determines that it has jurisdiction to hear Novelty's First Amendment claim, Novelty has failed to state a claim on which relief can be granted.  In the only allegations in plaintiff's complaint relating to its First Amendment claim, Novelty asserts that:

> During DEA's execution of the warrant, Novelty Vice President for Product JR Merlau placed upon a tripod video recorders and placed upon a table a tape recorder to make a permanent record for company executives, counsel, and the public of DEA's execution of the warrant (and to preserve evidence for use by counsel), which involved demands for immediate production of over 12,000 documents (a physical impossibility) on threat of arrest.  DEA agents thrice took custody of the recorders, pulled one recorder from the wall, removed it from the room in which it was located, and ordered that the recording device not be used.

Compl. ¶ 3.

Novelty further alleged that "DEA violated Novelty's rights under the First Amendment to the United States Constitution by preventing Novelty from recording the DEA agents [sic] execution of the July 2007 administrative search warrant," *Id.* ¶ 41, and that "DEA agents twice took

---

That case is plainly distinguishable.  In *Presbyterian Church*, the *only* agency action was the agents' recording of the services — there was no other agency action to appeal.  In this case, by contrast, Novelty's First Amendment claim arises out of DEA's administrative search (which, it is worth noting, the parties agree DEA was authorized to conduct).  There is no dispute that DEA's search is administratively reviewable; rather, the issue is whether Novelty can peel off its constitutional claim that undisputedly arises out of the agency action for which administrative exhaustion is required.

custody of Novelty's video-recording equipment when Novelty representatives attempted to record the events as they transpired." *Id.* ¶ 44.

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008). While the Court must construe the complaint in the plaintiff's favor, it "need not accept inferences drawn by the plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Comm'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Here, however, the Court is not limited solely to the facts pled in the complaint because prior to the filing of defendants' motion to dismiss Novelty moved for partial summary judgment on its First Amendment claim. *Cf. Fontana Aviation, Inc. v. Cessna Aircraft Co.*, 460 F. Supp. 1151, 1154 n.9 (N.D. Ill. 1978), *rev'd on other grounds*, 617 F.2d 478 (7th Cir. 1980) (plaintiff's interpretation of own complaint is "authoritative"). In support of its motion, Novelty provided additional facts relating to its First Amendment claims. As required by the Federal Rules of Civil Procedure, these additional facts were supported by declarations from Novelty's witnesses. *See* Fed. R. Civ. P. 56(a), (e). Thus, Novelty amplified the facts pled in the complaint, stating that it furnished an on-site conference room to the DEA inspection team during the pendency of the administrative inspection.[7]  *See* Merlau Decl. ¶ 38 (discussing conference room Novelty provided

---

[7]Characterizing his own client's declaration, plaintiff's counsel stated:

"To accommodate the inspection team, Novelty provided agents use of a 12 by 20 foot conference room as a workspace."

to the DEA inspection team during the pendency of the administrative inspection).

Significantly, Novelty's motion did not contain any factual assertion that DEA sought to prohibit it from videotaping anywhere but in the conference room Novelty provided to DEA as a workspace.  Novelty employee J.R. Merlau stated that "[o]n July 11, around noon, I installed a video-recorder on a tripod, occupying approximately 3 square feet in the corner of a 12 by 20 foot room so as not to block ingress or egress or DEA access to documents."  Merlau Decl. ¶ 38.  DEA agents, however, unplugged the camera upon returning from lunch and refused to allow Novelty to videotape its deliberations.  *Id.*  ("At approximately 1:15, I saw the recorder with its electrical conduit removed from the wall socket outside the room where DEA agents were present.").  On two more occasions, Novelty attempted to record DEA agents in the conference room, both of which DEA thwarted.  *Id.*  ¶¶ 39-40.

As we were entitled to do, defendants based the motion to dismiss for failure to state a claim not only on the Novelty's statements in its complaint, but also on Novelty's augmentation of those allegations as contained in its motion for partial summary judgment.  Thus, defendants argued that Novelty did not have a First Amendment right to videotape DEA's private deliberations conducted in the conference room, *see* Defs.' Mem. in Support of Mot. to Dismiss at 18-19, because none of the facts alleged in the complaint or adduced in support of Novelty's motion for partial summary judgment could support any interpretation other than the fact that Novelty set up its video camera in the conference room it had provided to DEA.

In response, Novelty argues for the first time, and without factual support, that DEA had no expectation of privacy in the conference room.  According to Novelty's counsel, "[t]his

---

Pl. Mem. in Support of Mot. for Partial Summary Judgment at 3.

workspace was not promised to DEA for its exclusive use. No such grant existed. . . . In fact, the purpose of the conference room was for DEA to discuss with Novelty the type of records required and for DEA to review the records as Novelty employees brought them in." Pl's. Opp. Mem. at 15.

These belated assertions are not facts; they are the unsupported *ipse dixit* representations of counsel. Novelty points to no statement in its complaint or in the declarations accompanying its motion for partial summary judgment on the First Amendment claim supporting its lawyers' claims. Novelty cannot rescue its deficient complaint by bald assertions by its lawyers in its opposition brief. *Romaine v. City of Chicago*, 2006 WL 3827316, * 7 (N.D. Ill. 2006) (rejecting lawyer's *ipse dixit* offered in lieu of an affidavit, noting that "unsupported conclusions of counsel in briefs do not count"). Thus, based on Novelty's complaint, as Novelty itself construed it in its motion for partial summary judgment, Novelty has failed to state a cognizable First Amendment claim. *See Fontana Aviation, Inc.*, 460 F. Supp. at 1154 n.9 (plaintiff's interpretation of own complaint is "authoritative").

Notwithstanding Novelty's assertions to the contrary, the First Amendment does not give anyone the right to videotape agency deliberations and conversations. The sole case on which plaintiff relies does not compel a different result. In *Robinson v. Fetterman*, 378 F. Supp. 2d 534 (E.D. Pa. 2005), the court held that a citizen had a right to videotape police officers as they performed truck inspections on a public highway. *Id.* at 541. This case, by contrast, involves an attempt to record deliberative agency activities conducted in private. Novelty attempts to nudge this case closer to *Robinson* by asserting (i) that DEA agents "did not discuss agency policy; they performed the routine tasks of warrant execution," and (ii) that during the administrative

inspection DEA did nothing more than "the routine act of issuing document requests and fishing for evidence." *See* Pl's. Opp. Mem. at 21. These conclusory, self-serving assertions beg the obvious question of how Novelty would be in a position to know what went on in the conference room where DEA worked when Novelty personnel were not present. In any case, Novelty's counsels' bald assertions, of course, are not facts. Plaintiff's after-the-fact attempts to cast the DEA's actions as non-deliberative and non-private fail, and Novelty's reliance on *Robinson* is therefore misplaced. Because plaintiff's First Amendment cause of action fails to state a claim on which relief can be granted, dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6).

### III.   EVEN IF NOVELTY HAS STATED A VALID CAUSE OF ACTION, IT LACKS STANDING TO PURSUE ITS FIRST AMENDMENT CLAIM

Even if Novelty had a First Amendment right to record DEA deliberations, it would not have standing to bring such a claim in this case. It is well settled that to have standing, a party must show, *inter alia*, that a favorable decision will redress the claimant's injury. *Massachusetts v. E.P.A.*, 127 S. Ct. 1438, 1453 (2007). Here, Novelty seeks a judicial reinstatement of its registration, relief that, even if granted, would do nothing to remedy Novelty's putative injury to its First Amendment rights. Put another way, even had Novelty been allowed to videotape DEA deliberations, Novelty cannot show that this would have changed the outcome of DEA's investigation in any respect. Novelty's administrative suspension is also not traceable to DEA's alleged conduct. Even if DEA did violate Novelty's First Amendment rights, this violation did not lead to the harm Novelty seeks to remedy in this case (*i.e.*, DEA's suspension of Novelty's registration). Accordingly, Novelty lacks standing to assert its First

Amendment claim.

## CONCLUSION

For the foregoing reasons, defendants respectfully submit that plaintiff's First Amendment claim should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).


Dated: June 26, 2008                                Respectfully submitted,

                                                    GREGORY G. KATSAS
                                                    Acting Assistant Attorney General

                                                    JEFFREY A. TAYLOR
                                                    United States Attorney

                                                    ARTHUR R. GOLDBERG
                                                    Assistant Director
                                                    Federal Programs Branch

                                                    _____/s/_____
                                                    C. LEE REEVES
                                                    Department of Justice
                                                    Civil Division, Federal Programs Branch
                                                    20 Massachusetts Avenue, N.W., Room 7109
                                                    Washington, D.C. 20530
                                                    Tel: 202-514-4805
                                                    Fax: 202-616-8470
                                                    *Attorneys for Defendant*