**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NOVELTY DISTRIBUTORS, INC.,
D/B/A GREENFIELD LABS,

        Plaintiff,

    v.

MICHELE LEONHART,
In her official capacity as Acting Administrator
of the Drug Enforcement Administration, *et al.*,

        Defendants.

No. CV-08-00635 (RMC)

<u>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF
JURISDICTION TO REVIEW THE FIRST AMENDMENT CLAIM OR, IN THE
ABSENCE THEREOF, FOR IMMEDIATE TRANSFER TO THE U.S. COURT
OF APPEALS FOR THE D.C. CIRCUIT**</u>

Plaintiff Novelty Distributors d/b/a Greenfield Labs ("Novelty"), by counsel and

pursuant to Fed. R. Civ. Pro 56, hereby moves this Honorable Court for summary

judgment on the issue of jurisdiction as to Novelty's First Amendment claim (the third

cause of action in Novelty's complaint).  This Court has jurisdiction to resolve Novelty's

challenge to the DEA's violation of Novelty's First Amendment rights.

As explained in the attached memorandum of points and authorities, there are no

genuine issues of material fact, and the issue of jurisdiction raised by the Defendants may

therefore be resolved forthwith as a matter of law.  Alternatively, if this Court finds that

the Court of Appeals for the D.C. Circuit, and not it, has  jurisdiction, then Novelty

respectfully requests the immediate transfer of this case pursuant to 28 U.S.C. § 1631 to

that court.

Respectfully submitted,

NOVELTY, INC.


By: _____/s/_____
          Jonathan W. Emord
          Andrea G. Ferrenz
          Peter A. Arhangelsky
          Nathaniel Wadsworth
Its Counsel

Emord & Associates, P.C.
11808 Wolf Run Lane
Clifton, VA  20124
Ph: (202) 466-6937
Fx:  (202) 466-6938
jemord@emord.com

Date submitted:  July 3, 2008

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NOVELTY DISTRIBUTORS, INC.,
D/B/A GREENFIELD LABS,

       Plaintiff,

    v.

MICHELE LEONHART,
In her official capacity as Acting Administrator
of the Drug Enforcement Administration, *et al.*,

       Defendants.

No. CV-08-00635 (RMC)

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF JURISDICTION TO REVIEW THE FIRST AMENDMENT CLAIM OR, IN THE ABSENCE THEREOF, FOR IMMEDIATE TRANSFER TO THE U.S. COURT OF APPEALS FOR THE D.C. CIRCUIT

Jonathan W. Emord (407414)
Andrea G. Ferrenz (460512)
Peter A. Arhangelsky
Nathaniel Wadsworth
EMORD & ASSOCIATES, P.C.
11808 Wolf Run Lane
Clifton, VA  20124
Ph:  (202) 466-6937
Fx:  (202) 466-6938
jemord@emord.com

Date Submitted:  July 3, 2008

## <u>TABLE OF CONTENTS</u>

Table of Contents.................................................................................................................ii

Table of Authorities ……………………………………………………………………...iii

I.  Motion for Summary Judgment Standard...........................................................5

II.  Statement of Uncontested Material Facts ...........................................................5

III.  This Court has Jurisdiction to Hear Novelty's Constitutional Challenge...........................8

       A.     Novelty has standing to bring its First Amendment claim .............................9

       B.     Novelty is not required to exhaust administrative remedies........................10

       C.     Novelty's claim presents an actual controversy that is reviewable
                 under the Declaratory Judgment Act ..........................................................12

IV.  If This Court Determines that it Lacks Jurisdiction, Novelty Requests Immediate
     Transfer Under 28 U.S.C. § 1631 to the U.S. Court of Appeals for the D.C. Circuit .......13

V.  Conclusion ..........................................................................................................13

<u>**TABLE OF AUTHORITIES**</u>

## Cases

<u>Alsager v. District Court of Polk County, Iowa</u>, 518 F.2d 1160 (8th Cir. 1975) ..............12

<u>Amos Treat & Co. v. SEC</u>, 306 F.2d 260 (1962).................................................11

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).......................................5

<u>Bennett v. Spear</u>, 520 U.S. 154 (1997) ...................................................9

<u>Butler v. U.S.</u>, 442 F.Supp. 2d 1311 (C.I.T. 2006)..........................................13

<u>Elrod v. Burns</u>, 427 U.S. 347 (1976) ....................................................9

<u>McKart v. U.S.</u>, 395 U.S. 185 (1969) ...................................................10

<u>Myers v. Bethlehem Shipbuilding Corp.</u>, 303 U.S. 41 (1938)..............................10

<u>Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs</u>, 417 F.3d 1272 (D.C. Cir. 2005) ...............................................................................9

<u>Newson v. Norris</u>, 888 F.2d 371 (6th Cir. 1989) .........................................9

<u>PDK Labs, Inc. v. Ashcroft</u>, 338 F.Supp. 2d 1 (D.D.C. 2004) .............................5

<u>Public Service Commission of Utah v. Wycoff Co., Inc.</u>, 344 U.S. 237 (1952) ...............12

<u>Robinson v. Fetterman</u>, 378 F.Supp. 2d 534 (E.D. Pa. 2005)..............................11

<u>Samuel Goldwyn, Inc. v. United Artists Corporation</u>, 113 F.2d 703 (3d Cir. 1940).........12

<u>Smith v. City of Cumming</u>, 212 F.3d 1332 (11th Cir. Ga. 2000)......................11

<u>Sterling Drug, Inc. v. FTC</u>, 450 F.2d 698 (D.C. Cir. 1971)..........................8, 11

<u>Trudeau v. FTC</u>, 456 F.3d 178 (2006) ...................................................8

<u>Welsh v. Wisconsin</u>, 466 U.S. 740 (1984)......................................................11

## Statutes

21 U.S.C. § 877..........................................................................8

28 U.S.C. § 1331.........................................................................8

28 U.S.C. § 1631 ................................................................................................13

28 U.S.C. § 2201 ...........................................................................................10, 11

28 U.S.C. § 2202 ................................................................................................12

## Other Authorities

17 Moore's Federal Practice § 1152 ...................................................................13

## Rules

Fed. R. Civ. P. 56 .................................................................................................5

## I.  MOTION FOR SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56 states that summary judgment shall be granted if the pleadings,

depositions, answers to interrogatories, admissions on file, and affidavits show that there

is no genuine issue of material fact in dispute and that the moving party is entitled to

judgment as a matter of law.  See Fed. R. Civ. P. 56; see also PDK Labs, Inc. v. Ashcroft,

338 F.Supp. 2d 1, 5-6 (D.D.C. 2004).  Material facts are those "that might affect the

outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986).

## II.  STATEMENT OF UNCONTESTED MATERIAL FACTS

DEA investigators arrived unannounced at Novelty facilities in Greenfield,

Indiana on July 9, 2007 to execute an administrative search warrant. Novelty's Statement

of Uncontested Material Facts ("Novelty's Statement") at ¶ 1 (this statement was

previously filed together with Novelty's Motion for Partial Summary Judgment on First

Amendment Issue on April 28, 2008; the exhibits referenced in the statement are not

included again with the instant memorandum). The warrant was executed over the course

of five days. Id. at ¶ 2. Novelty executives permitted DEA full access to Novelty's

facilities and assisted DEA in all of its requests. Id. at ¶ 2. To accommodate the

inspection team, Novelty provided agents use of a 12 by 20 foot conference room as a

workspace. Id. On Wednesday, July 11, 2007, DEA investigator Lisa Barnhill demanded

that Novelty Chief Financial Officer Ryan Polk produce records totaling over 12,000

pages in volume within three hours, a physical impossibility, yet Novelty executive Polk

tried to secure the required information in the format requested by Ms. Barnhill. Id. at ¶ 6.

To meet DEA demands, Novelty's IT staff was required to construct new computer

programming to produce the electronic records. Id. While Novelty had the information

within its databases, the requested data exceeded the file-size limitations for Novelty's

Microsoft programs. Id.

While Polk endeavored to meet DEA's extraordinary production demand, DEA

investigator Barnhill falsely accused him of "scrubbing documents," Id. at ¶ 7, and DEA

agent Madeline Kuzma falsely accused Polk of "sanitizing documents." Id.  In addition,

although she lacked authority to make an arrest, Ms. Barnhill threatened Novelty

executives with arrest. Id. She falsely alleged that Polk was obstructing and impeding the

investigation, then produced a code book and had him read the section that permits DEA

to arrest those who obstruct and impede the investigation. She stated to him that it would

not be Novelty's lawyers who would be arrested but, rather, Novelty's executives. See

Novelty Statement at ¶ 7. Barnhill also accused Polk of possessing a spent package of

ephedrine from a methamphetamine user, upon finding a returned package in the secure

caged facility that holds returns. See Novelty Statement Exhibit 4 at 2010 (Polk

Testimony). From Barnhill's threat, Novelty executives believed they were at imminent

risk of being arrested (despite the fact that unbeknownst to Novelty's executives, as a

matter of law no arrest was legally permissible under DEA's statutory and regulatory

scheme based on the actual facts). Indeed, Novelty executive Polk told executive Merlau

shortly after being threatened with arrest that he anticipated DEA would in fact make an

arrest. See Novelty Statement Exhibit 4 at 1533 (Polk Testimony); Statement Exhibit 2 at

2223-24 (Merlau's testimony).

Given the unsettling nature of these encounters and the threat of arrest, Novelty

executives conferred with outside counsel regarding the unusual and adversarial nature of

the warrant execution. Novelty Statement at ¶ 8.  Novelty executives decided to make a contemporaneous record of the events transpiring. Id. at ¶ 8. Ryan Polk specifically testified that "we had an exchange about the threat of arrest (which I felt was completely without merit) . . . and I wanted to have some proof or documentation that what was happening was exactly what was ultimately going to come out about what happened that day . . . I felt the best way to do that would be to document that through some form of media." Novelty Statement Exhibit 4 at 2011 (Polk Testimony). At around noon on July 11, while agents vacated the conference room for lunch, Novelty executives installed a video-recorder on a tripod at the far end of the conference room. Novelty Statement at ¶ 8. Novelty executives placed the video-recorder in a location that did not block ingress to or egress from the conference room and did not impede the working space of the room. Id. The video-recorder was set to record. At around 1:15 PM July 11, Novelty executives discovered that DEA agents had unplugged the video-recorder and removed it to the outside hallway where it was left inoperable. Id.

Novelty Vice President of Product Compliance Kenneth "JR" Merlau objected to DEA's removal of the video-recorder and reinstalled the camera in the presence of DEA investigators. Id. at ¶ 9. DEA agent Meador present in the conference room at the time rose from his chair at the conference room table, rapidly approached Merlau, and then forcibly removed the camera from Merlau's hands. Id. Meador then placed the video-recorder outside the conference room. Although Merlau again raised objection to the violation of Novelty's right to record, Meador declared that DEA investigators would not permit Novelty to record. Id.

Late afternoon on July 11, Merlau entered the conference room with a dictation audio-recording device. Id. at ¶ 10. Merlau depressed the record button and placed the audio-recorder on the conference table in plain view. Id. Novelty executives indicated they wished to have a recording of the events that included DEA's execution of the search and meetings held in the conference room between Novelty executives and DEA investigators. Id. Shortly thereafter Novelty executives discovered that DEA agents had dismantled the audio-recorder, removing the batteries and cassette tape, and placing the parts on the conference room table. Id. DEA likewise refused to allow videotaping anywhere in the building, including the lobby. Statement Exhibit 2 at 2380 (Merlau's testimony).

## III. THIS COURT HAS JURISDICTION TO HEAR NOVELTY'S CONSTITUTIONAL CHALLENGE

This Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; see also Trudeau v. FTC, 456 F.3d 178 (2006). Novelty claims that DEA violated Novelty's First Amendment rights to receive information and make a public record of the unreasonable execution of a warrant. Because this claim "arises under the Constitution," this court has original jurisdiction under 28 U.S.C. § 1331.  DEA's enabling statute does not provide otherwise.  The provision on direct appeal to the U.S. Court of Appeals applies to final agency actions.  See 21 USC § 877. The present action is not a final action of the DEA but is an action taken in the course of the execution of an administrative warrant that is attendant to a prosecution of Novelty that is still on-going.  Consequently, 21 USC § 877 does not apply.  The exhaustion doctrine does not apply to constitutional law violations. See Sterling Drug, Inc. v. FTC, 450 F.2d 698, 710 (D.C. Cir. 1971).  That is particularly

true, here, where the agency has taken the position that it is not the appropriate forum for resolution of the constitutional challenge.  See Transcript at 1130 (Argument from DEA Attorney Linden Barber) (Attached as Exhibit 1 to Novelty's Memorandum in Opposition to Government's Motion to Dismiss) (stating, "[Novelty's] claims with regard to the First Amendment violations are matters that are not properly before this Court and can be adjudicated and have their own remedy, and to that extent those matters should be handled in other fora") and ALJ Decision at 73 n. 34  (Attached as Supplement to Preliminary Injunction via May 27, 2008 Minute Order) (The ALJ concluded she was not in the appropriate position to make a recommended decision on Novelty's First Amendment and other constitutional claims).

### A.  Novelty has standing to bring its First Amendment claim

A plaintiff bringing a constitutional challenge before this court must demonstrate Article III standing, which requires (1) "an injury in fact" (2) that "is fairly traceable to the actions of the defendant" and (3) that "will likely be redressed by a favorable decision." Bennett v. Spear, 520 U.S. 154, 162 (1997)(citations and internal quotation marks omitted); see also Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs, 417 F.3d 1272, 1287 (D.C. Cir. 2005).

The undisputed facts satisfy the first two standing requirements. Novelty sustained an injury in fact, traceable to defendants, when DEA agents acted to deprive Novelty (including by use of force against executive Merlau) of its First Amendment right to make a recording of DEA's execution of a warrant on Novelty's premises, July 11, 2007. See Elrod v. Burns, 427 U.S. 347, 373 (1976)("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable

injury"); <u>see</u> <u>also</u> <u>Newson v. Norris</u>, 888 F.2d 371, 378 (6th Cir. 1989) ("The Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify [] relief").

The third standing requirement, "that the injury will likely be redressed by a favorable decision," is also satisfied in this case. In its Motion for Summary Judgment on First Amendment Issue, Novelty seeks declaratory relief under 28 U.S.C. § 2201(a), by which this Court is statutorily authorized to declare the existence of law violations, which declarations have the "force and effect of a final judgment or decree." 28 U.S.C. § 2201(a).  Such a declaration will ensure that DEA is on notice that the actions of its agents did violate the First Amendment and is forewarned that, in future, it must refrain from replicating those actions to avoid transgressing Constitutional limits.

Without the redress Novelty seeks, there is nothing that will prevent DEA agents from engaging in the same unconstitutional conduct in future either at Novelty or on the premises of any other regulatee.

The declaratory relief Novelty seeks will serve to redress Novelty's constitutional injury. Because Novelty satisfies the three standing requirements, this Court should find that it has jurisdiction over the First Amendment claim.

**B.  Novelty is not required to exhaust administrative remedies**

The doctrine of exhaustion dissuades "judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." <u>McKart v. U.S.</u>, 395 U.S. 185, 193 (1969)(quoting <u>Myers v. Bethlehem Shipbuilding Corp.</u>, 303 U.S. 41, 50-51 (1938)). That doctrine, however, is "subject to numerous exceptions." One of the exceptions, recognized by the U.S. Court of Appeals for the D.C. Circuit, arises "where

the agency has very clearly violated an important constitutional or statutory right."

Sterling Drug, Inc. v. FTC, 450 F.2d 698, 710 (citing Amos Treat & Co. v. SEC, 306

F.2d 260 (1962)).

Novelty's First Amendment claim arises from DEA's very clear violation of that

important constitutional protection. Novelty was denied the right to make a recording of

the government agents' actions on Novelty's premises. The First Amendment infirmity of

the prior restraint is well-recognized in federal law. See, e.g., Robinson v. Fetterman,

378 F.Supp. 2d 534 (E.D. Pa. 2005)(Party had a First Amendment right to videotape

police conduct from private land). A person has a First Amendment "right to gather

information about what public officials do on public property . . ." Smith v. City of

Cumming, 212 F.3d 1332, 1333 (11th Cir. Ga. 2000)(citations omitted).

In sum, the First Amendment protects a person's right to record the acts of public

officials to check their abuses, particularly when those official acts involve enforcement

against private parties. Robinson, 378 F.Supp. 2d 534. Through prior restraint, Novelty

was prohibited from recording the DEA's execution of a warrant at Novelty headquarters,

private property. See Welsh v. Wisconsin, 466 U.S. 740, 750 n.11 (1984)( Fourth

Amendment affords greater protection to home in context of warrantless searches). The

constitutional violation is readily apparent and is one for which DEA has argued the Drug

Enforcement Administration has no power to address. Indeed, DEA counsel argued

before the DEA that this court, not the DEA, was the proper forum for adjudicating the

challenge. See Transcript at 1130 (Argument from DEA Attorney Linden Barber).

C. **Novelty's claim presents an actual controversy that is reviewable under the Declaratory Judgment Act**

Novelty has an actionable claim under 28 U.S.C. § 2201 et seq. The Declaratory Judgment Act specifically permits jurisdiction where an "actual controversy" exists, "whether or not further relief is or could be sought." In addition, "the mere fact that declaratory relief does not provide a coercive remedy is no reason to conclude that it will be ineffective." Alsager v. District Court of Polk County, Iowa, 518 F.2d 1160, 1165 (8th Cir. 1975); see also Public Service Commission of Utah v. Wycoff Co., Inc., 344 U.S. 237, 240 (1952) (the relief is available for a concrete case admitting of an immediate and definite determination of the legal rights of the parties).

Declaratory relief may be awarded even if there is no present right to consequential relief and no relief is sought other than a declaration of the rights of the parties. See Samuel Goldwyn, Inc. v. United Artists Corporation, 113 F.2d 703, 707 (3d Cir. 1940) ("Where there is such a concrete case admitting of immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages").

Novelty alleges a concrete injury in the form of a constitutional deprivation of First Amendment rights and requests relief in the form of a declaration that resolves the legal rights of the parties concerning that injury. Moreover, the Declaratory Judgment Act provides for "[f]urther necessary or proper relief based on a declaratory judgment or decree." 28 U.S.C. § 2202. Therefore, Novelty's relief is not necessarily confined to the limits of the declaratory judgment itself. Novelty's requested relief resolves important

legal rights applicable in a situation likely to arise in the future as Novelty continues

business in a regulated industry. Novelty presents before the Court an actual controversy

capable of resolution through declaratory relief. Accordingly, declaratory relief is proper.

IV. **IF THIS COURT DETERMINES THAT IT LACKS JURISDICTION, NOVELTY REQUESTS IMMEDIATE TRANSFER UNDER 28 U.S.C. 1631 TO THE U.S COURT OF APPEALS FOR THE D.C. CIRCUIT**

By statute, in the interest of justice, this court is to transfer a civil action to "any

other such court in which the action or appeal could have been brought at the time it was

filed or noticed." 28 U.S.C. § 1631. "Transfer, rather than dismissal may be in the

interest of justice because it would save the plaintiff the time, expense and effort of

having to refile the action." 17 Moore's federal practice § 11.52. "Transfer is the

preferred course of action. . . Unless (1) the action is patently frivolous, (2) the action was

not timely filed in the original court, or (3) the movant was dilatory in seeking transfer."

Butler v. U.S., 442 F.Supp. 2d 1311, 1317 (C.I.T. 2006).

Defendants have argued their position on jurisdiction in their Motion to Dismiss.

See Govt.'s Motion to Dismiss at 13-20. In its opposing memorandum, Novelty refuted

the defendants' positions and, as in the instant memorandum, established the reasons why

jurisdiction is proper in this Court. If, despite controlling precedent, this court determines

that jurisdiction is lacking in the district court, Novelty respectfully requests that it

transfer the matter post haste to the U.S. Court of Appeals for the D.C. Circuit.

V. **CONCLUSION**

For the foregoing reasons, Novelty requests this Honorable Court grant Novelty's

Motion for Summary Judgment and hold jurisdiction exists in this Court to address

Novelty's First Amendment cause of action and initiate review of Novelty's Motion for

Summary Judgment on First Amendment Issue post haste.  If this Court determines

jurisdiction is lacking, Novelty requests that this Court promptly transfer the matter to the

U.S. Court of Appeals for the District of Columbia Circuit, so that Novelty may

expeditiously seek relief of its First Amendment rights.

Respectfully submitted,

NOVELTY, INC.


_____/s/_____
Jonathan W. Emord
Andrea G. Ferrenz
Peter A. Arhangelsky
Nathaniel H. Wadsworth
Its Counsel

Emord & Associates, P.C.
11808 Wolf Run Lane
Clifton, VA  20124
Ph:  (202) 466-6937
Fx:  (202) 466-6938
jemord@emord.com

Date submitted: July 3, 2008

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NOVELTY DISTRIBUTORS, INC.,
D/B/A GREENFIELD LABS,

        Plaintiff,

    v.                                                                     No. CV-08-00635 (RMC)

MICHELE LEONHART,
In her official capacity as Acting Administrator
of the Drug Enforcement Administration, *et al.*,

        Defendants.

**PLAINTIFF'S STATEMENT OF UNCONTESTED MATERIAL FACTS**

      Plaintiff, by counsel and pursuant to Federal Rule of Civil Procedure 56 and Local

Rule 7(h), hereby submits its statement of material facts as to which there is no genuine

issue.

      1.      On July 9, 2007, DEA investigators arrived unannounced at Novelty Inc.'s

Greenfield, Indiana facilities to execute an administrative search warrant. See Affidavit

of Kenneth "JR" Merlau at 10, ¶ 34 ("Merlau Affidavit"), Attached as Exhibit 1;

Affidavit of Ryan Polk at 2, ¶ 5 ("Polk Affidavit"), Attached as Exhibit 3; Transcript at

2215-26, 1511-15, 1529-36, 2022-33. The warrant issued under a matter in the Federal

District Court for the Eastern District of Indiana, Novelty v. Keisler, 1:04CV-1502-

DFHTAB. DEA agents occupied Novelty's facilities for five consecutive days. See

Merlau Affidavit at 10, ¶ 34; Merlau Transcript at 2215-26.

      2.      Novelty allowed DEA full access to its facilities, offered assistance with

all DEA requests, and provided DEA use of a conference room during the warrant

execution. See Merlau Affidavit at 11, ¶ 35; Polk Transcript at 2088-89; see also Novelty

Warehouse Map (Exhibit 5) (Conference room located in area designated "Main Office');

Merlau Transcript at 2270 (identifying location of office).

      3.     On the first day of the inspection, Novelty executives became concerned

of undue bias in the investigation. See Merlau Affidavit at 11, ¶ 36. DEA counsel Brian

Bayly arrived from the DEA Washington, D.C. office. Id.; Polk Affidavit at 2, ¶ 5. Bayly

was then acting counsel for DEA against Novelty in a DEA administrative proceeding

then pending before DEA and was involved with another matter brought by Novelty

against DEA in the United States District Court for the District of Columbia. See Merlau

Affidavit at 11, ¶ 36; Polk Affidavit at 2, ¶ 5. Also present from the DEA Washington,

D.C. office was Darrell Meador, an investigator accused of submitting a false affidavit

against Novelty in the case Novelty Inc. v. Tandy et al., 1:07-CV-00191 (RMU),

involving related factual issues then pending before the U.S. District Court for the

District of Columbia. See Merlau Affidavit at 11, ¶ 36; Polk Affidavit at 2, ¶ 5; Merlau

Transcript at 2221-22; Polk Transcript at 1529-35, 2006-07, 2116-18. At the outset of the

investigation, Novelty objected vehemently to the presence of Bayly and Meador because

of their involvement in proceedings against Novelty and Meador's pending false

statement charge (both present from DEA's Washington, D.C. office rather than from

DEA's Indianapolis district office) to involve a conflict of interest and to be evidence of

bias. See Merlau Affidavit at 11, ¶ 36; Polk Affidavit at 2, ¶ 5. Despite Novelty's

objection, both remained on site for three days to aid in the execution of the warrant. See

Polk Affidavit at 2, ¶ 5; Polk Transcript at 1529-35, 2006-07, 2116-18. Thereafter, when

Novelty's local counsel objected to the conflict of interest and bias to DEA counsel

Linden Barber, Barber caused Bayly and Meador to be removed. See Merlau Transcript at 2216.

4.      The statutory provision governing execution of the warrant in question requires that execution be performed reasonably. See 21 U.S.C. § 880 (b) (3) (B) ("to inspect, within reasonable limits and in a reasonable manner, controlled premises. . ."). The warrant itself also included this restriction. See Administrative Search Warrant at 1 (Exhibit 7). While executing the warrant, DEA agents acted unreasonably. See Merlau Affidavit at 11, ¶ 37. First, DEA counsel Brian Bayly then representing DEA in litigation against Novelty gratuitously stated at the start of the investigation that the execution of the warrant was not in response to Novelty's filing suit against DEA. See Merlau Affidavit at 11, ¶ 37; Merlau Transcript at 2216.

5.      DEA investigator Darrell Meador then accused by Novelty in the U.S. District Court for the District of Columbia of submitting a false affidavit (see Meador Affidavit, Exhibit 6) was permitted to execute the warrant which, based upon its breadth, would allow him to perform personal discovery to identify any evidence that might prove exculpatory of the charge against him, thereby revealing a bias and personal interest. See Merlau Affidavit at 11, ¶ 37; Merlau Transcript at 2217. In his affidavit, Meador falsely accused Novelty of having an intent to sell illegally tablet form ephedrine and pseudoephedrine containing over-the-counter drugs in states that limit sales only to gelcap forms. See Exhibit 6 (Affidavit of Meador). In fact, Novelty never sold and never intended to sell tablet form ephedrine and pseudoephedrine in gelcap states and the evidence upon which Meador relied for the charge did not establish a foundation for the accusation. See Exhibit 1 (Affidavit of Merlau).

6.      On Wednesday, July 11, 2007, DEA investigator Lisa Barnhill demanded that Novelty produce over 12,000 pages of documents in a format she specified within three hours. See Polk Affidavit 2-3, ¶ 6; Polk Transcript at 1513, 2095-99. The task was physically impossible in the time allotted. Id. Barnhill's demand required Novelty construction of new computer programming to produce the electronic records in a format suitable to DEA's request. Id. While the data existed in Novelty's normal business records, the request was beyond the capabilities of Microsoft software. Id.

7.      DEA investigator Lisa Barnhill falsely accused Novelty Chief Financial Officer Ryan Polk of "scrubbing documents," and DEA agent Madeline Kuzma falsely accused Mr. Polk of "sanitizing documents." See Polk Affidavit at 3, ¶ 7; Polk Transcript at 1534-35; see also Merlau Affidavit at 12, ¶ 37; Merlau Transcript at 2222-25. DEA agent Barnhill threatened to arrest a Novelty executive. See Polk Affidavit at 3, ¶ 7; Polk Transcript at 1534-35. Upon her baseless accusation that Polk sanitized documents, agent Barnhill handed Polk a codebook and accused him of obstructing the inspection. See Polk Transcript at 1531. Barnhill instructed Polk to read a codebook section that detailed DEA's authority to arrest under certain circumstances. Id. Barnhill then told Polk that "it won't be one of your attorneys that are arrested. It will be a Novelty employee." Id. Polk was under the impression that he would be arrested if he did not produce the documentation within three hours from Barnhill's demand. Id. at 1533. Ryan Polk later discussed the threat of arrest with JR Merlau before Novelty determined to video-record the warrant execution. See Merlau Transcript at 2223-24 (noting Polk was "very upset"). DEA agent Barnhill falsely stated that an empty product container inside Novelty's

caged, secured scheduled listed chemical product warehouse was likely left over from a methamphetamine user. Polk Transcript at 2010.

8.      Novelty executives conferred with outside counsel concerning the unusual events of and threats during the warrant execution. See Merlau Affidavit at 12, ¶ 38. Based on counsel's advice, at around noon on Wednesday, July 11, Novelty Vice President of Product Compliance Kenneth "JR" Merlau installed a video-recorder on a tripod to record what transpired. See Merlau Affidavit at 12, ¶ 38; Merlau Transcript at 2215-2222. He did so to obtain a full record of the warrant execution for use by counsel and for the public. See Merlau Transcript at 2221-26. The video recorder occupied approximately 3 square feet at the end of a 12 by 20 foot room so as not to block ingress, egress, or DEA access to documents. See Polk Transcript at 2011-12; Merlau Transcript at 2271. DEA agents removed the video-recorder from the room. See Merlau Affidavit at 12, ¶ 38; Merlau Transcript at 2215-22 Novelty executive Merlau objected to the removal of the video-recorder. Id. Over the objection, DEA agents stated that they would not allow themselves to be videotaped. Id.; see also Polk Transcript a 2014.

9.      Later on Wednesday, July 11, Novelty executive Merlau entered the conference room in the presence of DEA agents and again assembled the video-recorder on the tripod and connected the power cord into the wall socket. See Merlau Affidavit at 12, ¶ 39. DEA agent Meador proceeded rapidly from a chair at the conference table to Merlau. Id. at 13, ¶ 39; Merlau Transcript at 2388-2393. Meador grabbed the videorecorder from Merlau's hands, pulled the electrical cord from the wall socket, and removed the video-recorder from the room. Id. Merlau protested that Meador had no lawful authority to prevent the videotaping to no avail. Id.; Merlau Transcript at 2219-20.

10.    Later Wednesday afternoon, near the close of business, Merlau entered the conference room again, this time with a dictation audio-recorder. See Merlau Affidavit at 13, ¶ 40. Merlau began recording and placed the audio-recorder on the conference table in plain view. Id.; Merlau Transcript at 2220. As Merlau departed from the conference room he observed DEA agents dismantle the audio-recorder. See Merlau Transcript at 2378. Novelty executives returned later that afternoon to meet with DEA agents and found the recorder dismantled on the table. See Merlau Affidavit at 13, ¶ 40; Merlau Transcript at 2220-21; see also Polk Affidavit at 3-4, ¶ 8; Polk Transcript 2020-22.

11.    Novelty executives eventually stopped their attempts to video-record DEA because they feared DEA would consider them noncompliant and were aware of the earlier threats of arrest which had not been retracted. See Merlau Transcript at 2375, 2223-24; Polk Transcript at 1531 (threat of arrest). On Thursday, July 12, DEA agents swore at Novelty executives and departed the facility when Merlau again demonstrated that he intended to videotape the events of the search. See Merlau Transcript at 2379. Novelty executives still desired to video-record the warrant execution but DEA's prior three denials created an ongoing perception that Novelty could not videotape, would be prevented from videotaping. See Merlau Transcript at 2379. Moreover, they remained conscious of the threat of arrest and feared, based on DEA reactions, that an arrest would be made. Merlau Transcript at 2375 (fear of noncompliance); Polk Transcript at 1531-35 (threat of arrest).

Respectfully submitted,

NOVELTY, INC.

By: _____/s/_____
        Jonathan W. Emord
        Andrea G. Ferrenz
        Peter A. Arhangelsky
        Nathaniel H. Wadsworth

        Its Counsel

Emord & Associates, P.C.
11808 Wolf Run Lane
Clifton, VA 20124
Ph: (202) 466-6937
Fx: (202) 466-6938f
jemord@emord.com
Dated: July 3, 2008

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NOVELTY DISTRIBUTORS, INC.,
D/B/A GREENFIELD LABS,

        Plaintiff,

   v.

MICHELE LEONHART,
In her official capacity as Acting Administrator
of the Drug Enforcement Administration, *et al.*,

        Defendants.

No. CV-08-00635 (RMC)

**CERTIFICATE OF SERVICE**

I, Jonathan W. Emord, on July 3, 2008, caused to be served by overnight mail

Novelty's Motion for Summary Judgment on the Issue of Jurisdiction to Review the First

Amendment claim on counsel for the Defendants at the below address:

Lee Reeves
US Department of Justice
Federal Programs Branch
Civil Division
20 Massachusetts Ave. NW
Washington DC 20530

_____/s/_____
Jonathan W. Emord

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

**NOVELTY DISTRIBUTORS, INC.,**
**D/B/A GREENFIELD LABS,**
            **Plaintiff,**

**v.**

**MICHELE LEONHART,**　　　　　　　　**Case No. 08cv00635 (RMC)**
**In her official capacity as**
**Acting Administrator of the**
**Drug Enforcement Administration; et al**

            **Defendants.**

### PROPOSED ORDER

       Following the Court's consideration of the Motion for Summary Judgment on the

Issue of Jurisdiction to Review the First Amendment Claim, or, in the Absence Thereof,

for Immediate Transfer to the U.S. Court of Appeals for the D.C. Circuit, and in

consideration of the Defendants' Opposition thereto, the Court **HEREBY DECLARES**

THAT:

       1.       Jurisdiction exists in the District Court for the District of Columbia to

                resolve Novelty's First Amendment challenge to the DEA's prior

                restraint on recording DEA's execution of a warrant on Novelty's

                premises.

IT IS SO ORDERED this _____ day of _____, 200__.


                              _____
                              ROSEMARY M. COLLYER
                              UNITED STATES DISTRICT COURT